## Shannon *v.* Knights of the Macabees, Appellant.

*Appeals—Reducing charge to writing—Certificate—Act of May 11, 1911, P. L. 279.*

1. Where it appears from the record of a trial that the stenographer wrote out a full copy of the record and certified the same as being a correct transcript of his notes and this is approved and directed to be filed by the judge over his own signature, it is immaterial that the record does not show that appellant's counsel in terms before verdict requested that the charge be reduced to writing, and filed of record.

*Beneficial association—Death benefits—Misstatements in application.*

2. In an action against a beneficial association to recover benefits on the life of a deceased member, the court should give binding instructions for defendant where it appears that the deceased in his application for membership stated that one of his brothers had died of "influenza," and the other from "foot ball," and it appeared without contradiction both in the evidence and proofs of death that both brothers died of pulmonary tuberculosis and that the deceased himself had died from the same disease.

Argued April 16, 1913. Appeal, No. 25, April T., 1913, by defendant, from judgment of C. P. No. 4, Allegheny Co., Third Term, 1907, No. 828, on verdict for plaintiff in case of Mary Shannon v. Supreme Tent of the Knights of the Macabees of the World. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit for death benefits. Before COHEN, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,250. Plaintiff appealed.

*Error assigned* was in refusing binding instructions for defendant.

*A. C. Johnston,* with him *S. F. Bowser,* for appellant.— Binding instructions for defendant should have been

given: Angier v. Eaton, 98 Pa. 594; Com. Mut. Fire
Ins. Co. v. Huntzinger, 98 Pa. 41; Smith v. North-
western Life Ins. Co., 196 Pa. 314; March v. Ins. Co.,
186 Pa. 629; Felix v. Life Ins. Co., 216 Pa. 95; Holland
v. Kindregan, 155 Pa. 156; Dinan v. Catholic Mut.
Benefit Assn., 213 Pa. 489; Wells v. Life Ins. Co.,
191 Pa. 207; Lonzer v. R. R. Co., 196 Pa. 610; Wall v.
Royal Society of Good Fellows, 179 Pa. 355; Mengel
v. Life Ins. Co., 176 Pa. 280; Meyers v. Woodmen of
the World, 193 Pa. 470; Lutz v. Ins. Co., 186 Pa. 527.

*Harry Weisberger*, with him *Rody P. Marshall* and
*Meredith R. Marshall*, for appellee.—The record here
shows no exception to the charge before verdict, and no
request to the court before verdict to order it to be
filed. Consequently, there is no charge lawfully of
record for our consideration. Therefore, it is directed
that the appeal be quashed at costs of appellants:
Stout v. Quinn, 9 Pa. Superior Ct. 179; Scott v. Smaltz,
10 Pa. Superior Ct. 44; Leonard v. Leslie, 23 Pa. Supe-
rior Ct. 63; Mathushek Piano Manufacturing Co. v. Eng-
berry, 30 Pa. Superior Ct. 543; McConnell v. Penna. R. R.
Co., 206 Pa. 370; Brown v. Pitcairn Borough, 47 Pa. Su-
perior Ct. 413.

The case was for the jury: Drislane v. Lehigh Valley
R. R. Co., 236 Pa. 37; Dalmas v. Kemble, 215 Pa. 410;
Duffy v. York Haven Water & Power Co., 233 Pa.
107; Hoebel v. Ry. & Light Co., 233 Pa. 450; Squires
v. Job, 50 Pa. Superior Ct. 289; Cobb v. Ins. Co., 19
Pa. Superior Ct. 228; Arnold v. Ins. Co., 22 Pa. Supe-
rior Ct. 575; Keatley v. Ins. Co., 187 Pa. 197; Holleran
v. Life Ins. Co., 18 Pa. Superior Ct. 573; Weber v.
Life Ins. Co., 172 Pa. 111; Schwartz v. Life Ins. Co.,
5 Pa. Superior Ct. 285.

Opinion by Morrison, J., October 13, 1913:

On March 4, 1905, Charles J. Shannon applied for
membership in the organization known as The Knights

of the Maccabees of the World, and on the usual medical examination was admitted to membership on March 31, 1905, and a certificate of insurance for $1,000 was issued to him in which his mother Mary Shannon, plaintiff in this action, was named as beneficiary. At that time Charles J. Shannon was unmarried and about twenty years of age, residing with his parents with whom he continued to live until his death on November 28, 1906. Although he appears to have been in good health at the date of his policy, yet shortly thereafter it is alleged he became affected with pulmonary tuberculosis and for a period of at least ten months next preceding his death was under continuous treatment for that disease.

In his application for membership he was asked whether his father, mother, brothers or sisters, etc., had been afflicted with or died from consumption, to which he answered "No," and in answer to the question as to his family history he stated that, among others, he had two deceased brothers, one of whom, aged twenty-three, had died from "influenza," and the other, aged twenty-nine, from "foot-ball."

In the beneficiary's proof of death, signed and sworn to by Mary Shannon, plaintiff, she stated that not only Charles J. Shannon, but also the two brothers before referred to, whose names were James and Thomas, respectively, had each died from pulmonary tuberculosis or consumption. These facts were clearly established by the direct, unimpeached and practically uncontradicted testimony of Doctors Kerr, Shultz and Pollock, and the answers of the insured as to the cause of death of his two brothers being thus shown to be untrue, and being material to the risk, the contention of defendant's counsel is that the policy of insurance was void and that the trial judge should have directed the jury to return a verdict for the defendant.

The first assignment of error rests on defendant's fourth point and the answer thereto, to wit: "Under

all the evidence the verdict must be for defendant."
Answer. "This point I refuse. I refuse to take this
case away from the jury. I say that under all the
evidence in this case, and under all the legal conditions
applying to this case, in my judgment it is a matter
for the jury, and if I am wrong I can be corrected here-
after." The third assignment is based on the refusal
of the court to grant judgment in favor of the defend-
ant non obstante veredicto. These two assignments
are controlling and they may be considered together.

Counsel for appellee, in the opening of their printed
argument, take the position that: "All the assignments
of error are practically the same, being to the charge
of the court, and as there was no request, before verdict,
that the charge be reduced to writing from the stenog-
rapher's notes and filed of record, and the record does
not show that such request was made, the charge of
the court is not lawfully of record for your considera-
tion, and the appeal should therefore be quashed."
Citing Curtis v. Winston, 186 Pa. 492. We are some-
what surprised to find the counsel thus contending for
several reasons: First, our recollection is that at the
argument the motion to quash was withdrawn and it is
very certain that the counsel argued the case on its
merits as if the charge of the court and the testimony
had been regularly brought into the record. Second,
at the end of the charge we find the following: "To
which charge of the court, and to the refusal of the
court to affirm defendant's fourth point, counsel for
defendant except.

"To which charge of the court counsel for plaintiff
excepts.

"Exceptions allowed and bill sealed."

Now as to the charge, and especially as to the fourth
point, we regard the above as the equivalent of a direc-
tion by the court to the stenographer to write out and
file the charge of record. It certainly clearly appears
in the record of the cases just what counsel for defend-

ant requested and what the court refused to do in response to the request: Act of May 11, 1911, P. L. 279. In addition to this it is very certain that the charge, points and answers, and the notes of testimony were transcribed and filed by the stenographer, and it is not claimed that the charge of the court and the testimony as filed and printed are not strictly correct. Moreover, the record shows that the stenographer wrote out a full copy of the record and certified the same as being a correct transcript of the notes taken by him at the trial, and following this certificate we find the following: "The foregoing record of the proceedings upon the trial of the above cause is hereby approved and directed to be filed. JOSIAH COHEN, P. J."

It thus appears that the trial judge considered what took place in open court at the end of his charge as a request that the record be transcribed and filed and we regard it as immaterial that the record does not show that appellant's counsel, in terms, before verdict requested that the charge be reduced to writing and filed of record. Since the Act of May 11, 1911, P. L. 279, went into effect it would be straining the law to hold, on the facts in the present case, that the charge of the court and the testimony are not before us for review. That act provides: "The official stenographer shall transcribe the notes of the evidence taken upon the trial of any case, under the following conditions and these only: (a) When directed by the court so to do; or (b) When an appeal has been taken to the Supreme or Superior Court; or (c) When he shall be paid for a copy thereof by a person requesting him to transcribe it." The charge of the court and the notes of evidence here were transcribed and filed by the stenographer and certified to by the court as full and correct and as no exceptions appear to have been taken to the correctness of the same, we are disposed to hold that the record was so transcribed and certified and filed as to bring the same properly before us for review.

This brings us to a consideration of the important question of whether the learned trial judge erred in refusing to give a binding instruction in favor of the defendant. In his opinion refusing a new trial and judgment non obstante veredicto we find the following: "To grant the latter would be to admit that there was no conflict of evidence on any material fact nor was there any reason why there could not have been binding instructions at the trial. Neither of these conditions prevailing we are compelled to refuse the judgment non obstante veredicto."

A careful examination of the charge, the testimony and the exhibits in evidence leads us to the conclusion that the learned court erred in refusing to give a binding instruction in favor of defendant and in refusing judgment non obstante veredicto. Upon the question of the falsity of the representations of the assured that his two brothers died, one from "influenza" and the other from "foot-ball" we think there can be no doubt. The two brothers died from pulmonary tuberculosis or consumption which is clearly established by the testimony of three practicing physicians, to wit, Doctors Kerr, Shultz and Pollock, and we fail to find more than a scintilla of testimony contradicting their evidence. In addition to this the plaintiff, in her proof of death of her son, the assured, signed and sworn to by her, states that Charles J. Shannon, and the two brothers of the assured, referred to by him in his application, to wit, James and Thomas, had each died from pulmonary tuberculosis or consumption. Thus these facts were so clearly established by the testimony of the three physicians and by the admission of the plaintiff herself that a submission of them to a jury would, probably, be interpreted by that body as a license to render a capricious verdict. Without the testimony of the physicians, it seems to us that the solemn admission of the appellee in her proof of death that the two brothers died from consumption, was sufficient to entitle the defendant to

a binding instruction on the ground that the assured in his application, whether intentionally or unintentionally, stated an untruth as to the cause of the death of his brothers.

In Lonzer v. Lehigh Valley Railroad Co., 196 Pa. 610, the Supreme Court said: "When the testimony is not in itself improbable is not at variance with any proved or admitted facts, or with ordinary experience, and comes from witnesses whose candor there is no apparent ground for doubting, the jury is not at liberty to indulge in a capricious disbelief. If they do so, it is the duty of the court to set the verdict aside. Such cases are exceptional but this is one of them. . . . The verdict should have been set aside as in direct disregard of the evidence, and where that is the case, the court may refuse to submit it at all and direct a verdict accordingly: Holland v. Kindregan, 155 Pa. 156." See also Cohen v. Phila. Rapid Transit Co., 228 Pa. 243.

In Angier v. Eaton, Cole & Burnham Co., 98 Pa. 594, the Supreme Court quoted with approval from the opinion of WOODWARD, C. J., in Eister v. Paul, 54 Pa. 196, "where the evidence is all one way, and is so satisfactory that a court would not sustain a verdict that should find against it, we will not reverse the judgment because the judge declared the true effect of the evidence instead of submitting it to the jury." In Commonwealth Mutual Fire Ins. Co. v. Huntzinger, 98 Pa. 41, the Supreme Court held: "No principle of law will enable a party who guarantees a fact upon which a contract of insurance is based, which fact is afterwards found not to exist, to enforce the contract. He agrees to answer for the truth of the fact, and cannot escape on the ground of his mistake as to its existence."

It is conceded in the present case that the assured warranted the truth of the facts stated in his application. See also Smith v. Northwestern Mutual Fire Insurance Co., 196 Pa. 314. In March v. Metropolitan Life Ins. Co., 186 Pa. 629, it was held by the Supreme

Court: "In an action upon a policy of life insurance where it appeared that the insured in his application concealed the fact that he had consumption, the company is entitled to an unqualified affirmance of a point to the effect that if the insured had consumption at the time of the delivery of the policy, the company is entitled to a verdict." In Holland v. Kindregan, 155 Pa. 156, the Supreme Court said: "Where the evidence is so weak that it would be the duty of the court to set aside a verdict of the jury, there is no propriety in submitting it."

A more recent case may be found in Dinan v. Supreme Council of the Catholic Mutual Benefit Association, 213 Pa. 489, where the Supreme Court held that the court below erred in submitting the case to the jury, and reversed the judgment and entered judgment in favor of the defendant. In Wells v. Insurance Co., 191 Pa. 207, the Supreme Court held: "That in an action on a policy of life insurance where the uncontradicted testimony is that the insured died from the results of an abortion to which she had voluntarily submitted herself, without any justifiable medical reason, it is grave error for the court to submit to the jury the question of whether there was any other cause of death than the abortion, and whether there was any medical occasion for the operation." In this case the Supreme Court reversed the judgment and entered·judgment in favor of the defendant.

Mengel v. Insurance Co., 176 Pa. 280, is another case where the Supreme Court held that the court below erred in refusing to direct a verdict for the defendant, and the judgment was reversed and judgment entered for defendant in the Supreme Court. Meyers v. Woodmen of the World, 193 Pa. 470, is another case where the Supreme Court held that the defendant was entitled to binding instructions. See also Lutz v. Metropolitan Life Insurance Co., 186 Pa. 527.

In our opinion the testimony as to the misrepresent-

ation of the assured in his application was all one way and it was so clear, strong and convincing, when considered in connection with the admission of the appellee in her proof of death, that the learned trial judge seriously erred as raised in the first and third assignments of error, and they are sustained.

The judgment is reversed with directions to the court below to enter judgment in favor of the defendant non obstante veredicto.