# Lerch *v.* Hershey Transit Company, Appellant.

*Negligence—Street railways—Passenger — Premature start — Signal—Charge of court—Inconsistent findings by jury.*

1. In an action to recover damages for personal injuries sustained by a passenger in consequence of the premature start of defendant's street car at the moment when she was alighting therefrom, which premature start it was alleged was caused by the careless act of the conductor, it appeared from plaintiff's testimony that she was injured by a premature start but she offered no evidence as to who had given the signal to the motorman. Defendant proved by several witnesses that the signal to start the car was given by a passenger who was unauthorized by the conductor. The plaintiff, though called in rebuttal, refused to say that the conductor had given the signal. Whether the passenger was within the view of the conductor when he gave the signal was in dispute. The court submitted the question of the defendant's negligence to the jury, instructing them that they might determine whether the conductor had given the signal to start the car. The jury made inconsistent findings that the conductor "gave the signal to start the car," and that "the person who gave the signal was in full view of the conductor when it was given." *Held*, a new trial must be granted, and that it was error for the court to submit to the jury the question whether the conductor gave the signal, in view of the uncontradicted evidence to the contrary, and the inconsistent findings showing that the jury was misled by such instruction.

2. In such case, where the plaintiff in her statement of claim alleged that the negligence which caused the accident was that of the conductor who started the car, it was error for the court to instruct the jury that if they found that the motorman started the car "suddenly, with a jerk or jar," they might find a verdict for the plaintiff.

3. In such case, the trial judge exceeded his discretion in commenting upon the testimony of a witness who had testified posi-

tively that plaintiff was safely on the ground before the car started by saying that "he (the witness) thought she had reached the ground," and in characterizing the testimony of such witness as "remarkable"; and further saying, in referring to the testimony of the conductor, "he would have you believe it," thus tending to throw discredit upon him.

Argued May 21, 1914. Appeals, Nos. 5 and 6, May T., 1914, by defendant, from judgment of C. P., Dauphin Co., March T., 1912, No. 361, on verdict for plaintiff in case of Mabel Lerch and Harry F. Lerch v. Hershey Transit Company. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Trespass for personal injuries. Before McCARRELL, J.
The facts appear by the opinion of the Supreme Court.
Verdict for plaintiff, Mabel Lerch, for $1,800, and for plaintiff's husband, Harry F. Lerch, for $700. Defendant appealed.

Errors assigned, were, among others, the charge of the court and in refusing to enter judgment for defendant n. o. v.

John E. Snyder, with him E. M. Hershey and F. Lyman Windolph, for appellant.

A. H. Hull, with him E. E. Beidleman, for appellee.

OPINION BY MR. JUSTICE BROWN, July 1, 1914:

On March 25, 1910, Mabel Lerch, one of the appellees, was a passenger on a car of the defendant company. In response to a notice from her the conductor stopped it at the point where she wished to alight. According to her testimony, as she was in the act of stepping down, with her left foot on the step of the rear platform and her left hand holding the handrail, the car started and she was thrown to the ground, sustaining injuries for which she and her husband seek compensation in this

action.  Her complaint, as set forth in the statement of her cause of action, is that, as she was carefully and cautiously attempting to alight, the conductor "carelessly, wantonly and negligently started the car with great suddenness," causing her to be thrown to the ground.

If the car was started before the plaintiff had an opportunity to step safely from it, it was negligence on the part of someone to have started it, and the presumption of the law is that the person guilty of such negligence was the conductor, whose duty it was to give the signal to start and stop.  As it was plaintiff's right to rely upon this presumption, she was not required to show that the conductor had given the signal to start before she had gotten off the car, and there was no proof that he had done so.  But the presumption of the conductor's negligence was liable to be rebutted, and if it was conclusively shown—so conclusively that it was not a question of fact for the jury—that someone else—an intermeddling passenger—without the authority or knowledge of the conductor, had rung the bell, signaling the motorman to start the car, the defendant company is not liable to the appellee for the consequences of the premature starting, and the jury should have been so instructed.

The only witness called by the plaintiff who testified as to the premature starting of the car was Mrs. Lerch herself, and, as just stated, she failed to say that the conductor had given the signal to start it.  The presumption that he had done so was clearly overcome by the testimony submitted by the defendant that he had not.  He himself testified that the car had started without any signal from him.  Morris Foreman, a passenger on the car and a disinterested witness, testified that he had given the signal to the motorman.  His testimony as to this is as follows: "Q.  Who signaled the mortorman to start the car?  A.  I did.  Q.  Were you a passenger on that car?  A.  Yes, sir.  Q.  Who was the conductor?  A.  Alvin Flowers.  Q.  Tell us whether or not Alvin

Flowers authorized you or directed you to start the car? A. No, sir." Benjamin Boyer, another passenger and an equally disinterested witness, testified that he saw Foreman give the signal to start in the baggage compartment of the car. At the close of defendant's testimony the plaintiff was called in rebuttal and testified that, when she was alighting from the car, she saw the conductor on the rear platform. Her testimony was, "he was positively on the platform"; but she again failed to say that he had given the signal to start. The testimony of the conductor that he had not given the signal to start the car, of Foreman and of Boyer as to who had given it, was not at variance with any proof to the contrary, and as there was no ground for doubting the candor of these three witnesses, especially as the plaintiff herself, when called in rebuttal, would not say that the conductor, whom she saw on the platform, had given the signal to start, the jury ought not to have been given a license to indulge in an utterly unfounded and capricious belief that the conductor had given the signal: Lonzer v. Lehigh Valley R. R. Co., 196 Pa. 610; Schley v. Susquehanna & New York R. R. Co., 227 Pa. 494; Walters v. American Bridge Co., 234 Pa. 7. But the learned trial judge gave them a license to disregard the testimony by saying: "If you conclude the conductor gave it (the signal) say so"; and their answer fairly illustrates what may result, especially in this class of cases, when a trial judge permits a jury to return a verdict against the evidence, for the startling, specific finding was that the conductor "gave the signal to start the car." Still more startling, in view of this finding, is a second one almost immediately following, that "the person who gave the signal was in full view of the conductor when it was given." If nothing more were disclosed by the assignments of error than these two findings, the first in the teeth of the evidence, and the second utterly inconsistent with the first, the case would have to be retried, for the jury may have found against the defendant because they

believed, in spite of all the evidence to the contrary, that the conductor had given the signal to start the car.

While the court specifically instructed the jury to find whether the conductor had given the signal to start the car, they were at the same time told that who gave it was not of controlling importance, if the motorman started it "suddenly, with a jerk and jar." In this we cannot concur. The negligence specifically charged against the defendant in the pleadings, and which it was called upon to answer, is that the conductor carelessly started the car. This means that he carelessly gave the signal to the motorman to start, for he himself had nothing to do with the controller. If the plaintiff was injured in the manner described by her, it was because the car was started before she was given an opportunity to alight safely from it, and the proximate cause of her injuries was the premature starting of it in pursuance of a signal, whether it started suddenly or not. If it was started by a signal given by a passenger, without the authority or knowledge of the conductor, the appellee cannot recover: Cohen v. Philadelphia R. T. Co., 228 Pa. 243; Ferry v. Manhattan Railway Co., 118 N. Y. 497; Krone v. Electric Railway Company, 97 Mo. App. 609; Moore v. Woonsocket Street R. Co., 27 R. I. 450; Fanshaw v. Norfolk & Portsmouth Traction Co., 108 Va. 300. But the case was for the jury under testimony from which they could have found that the person who gave the signal to start was in full view of the conductor when it was given, and he might, by the exercise of reasonable diligence, have prevented it. Foreman's own testimony was that, when he gave the signal, he was right inside of the door, with his head outside of it. If this were so, he was in plain view of the conductor on the platform.

If the testimony of the witnesses called by the defendant was to be believed by the jury, the plaintiff was safely on the ground before the car started, and her complaint against the defendant is groundless. The testi-

mony of these witnesses, flatly contradictory of plaintiff's uncorroborated statement of how she was injured, was not only minimized, but some of it was misquoted in the charge to the jury. One of the witnesses who testified positively that he saw the plaintiff get off the car, and that she was down on the ground before it started, was quoted as testifying that "he thought she had reached the ground." The testimony of this witness was characterized as "remarkable," and, in referring to the testimony of the conductor, the trial judge said, "he would have you believe it." This improper language threw discredit upon the conductor. The complaint of the appellant, that the charge had the effect of improperly discrediting its witnesses, cannot be overlooked. The seventh, eighth, ninth, fourteenth and seventeenth assignments of error are sustained, and the judgment is reversed with a venire facias de novo.